## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| TAMEKA EKPE, ALIDU YALLAH, ANTONIO DAVIS, and JEFFREY COLEMAN, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>BIO-LAB, INC. and KIK CONSUMER PRODUCTS, INC.,<br><br>    Defendants. | Case No.<br><br>**Complaint – Class Action**<br><br>**JURY TRIAL DEMANDED** |

## <u>CLASS ACTION COMPLAINT</u>

This class action complaint is brought by Plaintiffs ("Plaintiffs"), individually and on behalf of all others similarly situated ("Class"), against Defendants Bio-Lab, Inc. and KIK Consumer Products, Inc. ("Defendants"). The allegations set forth below are based on personal knowledge as to Plaintiffs' own acts and on investigation conducted by counsel as to all other allegations.

## <u>PARTIES</u>

1.    Plaintiff Tameka Ekpe is a citizen and resident of Georgia.

2.    Plaintiff Alidu Yallah is a citizen and resident of Georgia.

1

3.     Plaintiff Antonio Davis is a citizen and resident of Georgia.

4.     Plaintiff Jeffrey Coleman is a citizen and resident of Georgia.

5.     Defendants Bio-Lab, Inc. is a Delaware corporation with its principal place of business at 101 MacIntosh Blvd., Concord, Ontario, Canada L4K4R5, and a registered service agent of CT Corporation System, 289 S. Culver St., Lawrenceville, GA, 30046-4805. Upon information and belief, Bio-Labs, Inc. is a wholly-owned subsidiary of KIK Consumer Products, Inc.

6.     Defendants KIK Consumer Products, Inc. is a Canadian corporation with its principal place of business at 101 MacIntosh Blvd., Concord, Ontario, Canada L4K4R5.

## JURISDICTION AND VENUE

7.     This Court has subject-matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) because (1) the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, (2) the action is a class action, (3) there are Class members who are diverse from Defendants, and (4) there are more than 100 Class members.

8.     This Court has personal jurisdiction over Defendants because Plaintiffs' claims arise out of Defendants' contacts with this district.

9. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district.

## FACTUAL ALLEGATIONS

10. Bio-Lab operates a chemical manufacturing facility on Old Covington Highway in Conyers, Rockdale County, Georgia (the "Plant").

11. Bio-Lab manufactures pool and spa chemicals under brands including BioGuard, SpaGuard, ProGuard, Pro Series, Spa Essentials, Natural Chemistry, SeaKlear, and AquaPill.

12. On Sunday, September 29, 2024, at approximately 5:30 a.m., a fire suppression sprinkler at the Plant activated, spraying water onto chemicals inside the plant, causing a chemical reaction that produced hazardous gas.

13. The incident also caused a fire on the roof of the Plant, which caused the roof to collapse.

14. Removal of the hazardous chemicals from the damaged Plant would require heavy machinery.

15. The second fire was extinguished around 4:00 p.m., but thick black smoke was still visible in the air around the Plant.

16. Smoke from the fire as it descended onto the property of homeowners and the community is depicted below.



17.     The billowing smoke from the fire is depicted in the photo below.



18.     Firefighters were forced to use water to extinguish the fires despite the water potentially reacting with the chemicals and creating more toxic fumes.

19.     The uncontrolled chemical reaction, fire, and damage to the Plant caused hazardous chemicals, including chlorine-based pool chemicals, to stream into the air and throughout the surrounding community.

20.     The hazardous smoke includes chlorine, which is a toxic gas that can

irritate the respiratory system, eyes, and skin.

21.    Chlorine can be smelled at concentrations as low as 3 ppm.

22.    Coming into contact with chlorine is extremely dangerous at concentrations as low as 10 ppm.

23.    Chlorine causes coughing and vomiting at 30 ppm, lung damage at 60 ppm, and death in a short time after exposure to 1000 ppm.

24.    The Occupational Safety and Health Administration's permissible exposure limit for chlorine is 1 ppm.

25.    The National Institute for Occupational Safety and Health's recommended exposure limit is 0.5 ppm over 15 minutes.

26.    Chlorine is heavier than air and therefore settles near ground level, staying present in the area around the Plant and taking more time to dissipate.

27.    The chemicals and fire formed thick smoke that spread throughout the community and affect the health of anyone who encounters them.

28.    Chemical smoke can also enter and stay inside buildings for a longer time than it takes to dissipate in outside air, causing continuing harm to people inside homes, schools, and businesses.

29.    Rockdale County issued an evacuation order covering 8 square miles and affecting approximately 17,000 people living near the Plant as well as a shelter-in-place order covering the entire county, 132 square miles, affecting over 90,000

individuals.

30.    Individuals near, but not inside, the evacuation zone were also ordered to stay away from the area.

31.    Individuals located north of the evacuation zone were ordered to shelter in place, including to remain indoors with the windows and doors closed, and turn off their air conditioners.

32.    Individuals who chose not to evacuate or could not evacuate were ordered to shelter in place.

33.    The response to the disaster required out-of-state support due to the size and extremely hazardous nature of the chemical smoke, as well as emergency management workers being occupied with efforts related to Hurricane Helene, which had hit Georgia in the previous days.

34.    Churches near the affected area were ordered to cancel services or send members home immediately.

35.    A section of Interstate 20 was closed in both directions due to the heavy smoke. The highway was reopened around 8:00 a.m. on Monday, September 30.

36.    Schools, colleges, and businesses were also forced to close to protect their students and employees.

37.    A small number of schools, gymnasiums, and recreation centers outside of the impacted area were opened to house displaced individuals who were forced

to evacuate. However, only a few hundred cots were available.

38.     Individuals who evacuated have been forced to pay for hotels, stay with friends or family, or find other accommodations.

39.     Individuals with medical issues are in greater danger not only from exposure to the hazardous smoke, but also because of difficulties they may face in evacuating, sheltering in place, or obtaining medical care during the emergency.

40.     Individuals were displaced and could not return to their homes or end sheltering in place for weeks.

41.     Over 24 hours after the beginning of the disaster, residents in nearby areas continued reporting a heavy chemical haze throughout the community and a strong chlorine smell.

42.     That chlorine can be smelled by individuals near the disaster area is particularly alarming because chlorine is extremely hazardous at concentrations only slightly higher than the threshold for scent.

## <u>CLASS ACTION ALLEGATIONS</u>

43.     This action is brought as a class action under Fed. R. Civ. P. 23.

44.     Under Fed. R. Civ. P. 23(b)(2) and (b)(3), Plaintiffs intend to seek certification of a Class defined as follows:

> All persons, including businesses, subject to the evacuation or shelter in place orders, and all other persons, including businesses, exposed to chlorine and other hazardous chemicals, as a result of the fire and release of

chlorine and other hazardous chemicals at the Bio-Lab facility in Conyers, Georgia beginning on September 29, 2024.

45.    The Class excludes the following: Defendants, their affiliates, their current and former employees, officers, and directors, and the judge assigned to this case.

46.    The Class definition may be modified based upon discovery and further investigation.

47.    *Numerosity*: The Class is so numerous that joinder of all members is impracticable. The Class is believed to total more than 90,000 persons, but the precise number of class members is unknown at this time. The size of the class may be ascertained through discovery of records from Defendants and third parties.

48.    *Commonality*: There are questions of law or fact common to the Class, including, without limitation:

a.    Whether Defendants negligently maintained, controlled, oversaw, inspected, or monitored the Bio-Lab facility in Conyers, Georgia;

b.    Whether Defendants negligently manufactured, maintained, controlled, oversaw, inspected, or monitored hazardous chemicals;

c.    Whether Defendants acted with conscious disregard for the safety and health of Plaintiffs and Class Members entitling Plaintiffs and Class Members to punitive damages;

d.    Whether Defendants created a nuisance;

e.    Whether Defendants' actions constitute negligence per se;

9

f.      Whether Defendants' actions constitute trespass;

g.      Whether Defendants are strictly liable for an ultrahazardous activity;

h.      Whether Defendants are liable for the defective and unreasonably dangerous conditions of allowing hazardous chemicals to burn or otherwise release into air; and

i.      Whether Defendants' misconduct, negligence, and recklessness, and breaches of legal duties owed to businesses and residents of the community resulted in the Plaintiffs' and Class Members' exposure to hazardous chemicals.

49.   *Typicality*: Plaintiffs' claims are typical of the claims of Class members. Plaintiffs and Class members suffered damages in substantially the same manner, have the same claims against Defendants relating to the same course of conduct, and are entitled to relief under the same legal theories.

50. *Adequacy*: Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs' interests are aligned with the interests of the Class. Plaintiffs have no conflicts of interest that will interfere with the maintenance of this class action. Plaintiffs' counsel are experienced in the prosecution of complex class actions, including actions with issues, claims, and defenses similar to the present case, and they will adequately represent the interests of the Class.

51. *Predominance and superiority*: Questions of law or fact common to the Class predominate over any questions affecting individual members because all claims arise out of the same unlawful conduct by Defendants and depend on the same determinations of law and fact. A class action is superior to other available methods for the fair and efficient adjudication of this case because individual joinder of all Class members is impracticable and the amount at issue for each Class member would not justify the cost of individually litigating thousands of lawsuits. Should individual Class members be required to bring separate actions, this Court would be confronted with a multiplicity of lawsuits burdening the court system while also creating the risk of inconsistent rulings and contradictory judgments. In contrast to proceeding on a case-by-case basis, in which inconsistent results will magnify the delay and expense to all parties and the court system, this class action presents far fewer management difficulties while providing unitary adjudication, economies of scale and comprehensive supervision by a single court. There are no difficulties that

are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

52.    Accordingly, this class action may be maintained pursuant to Fed. R. Civ. P. 23(b)(3).

53.    Defendants' unlawful conduct applies generally to the Class, thereby making appropriate final equitable relief with respect to the Class as a whole.

54.    Accordingly, this class action may be maintained pursuant to Fed. R. Civ. P. 23(b)(2).

55.    This action meets the jurisdiction amount under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2) and (6), because the amount of damages sought on behalf of the putative class exceeds $5,000,000.00. The putative class consists of an estimation of more than 90,000 Class members who seek to recover for the losses suffered as a result of evacuation or shelter in place orders and exposure to chlorine and other hazardous chemicals caused by Defendants' negligence and other wrongful conduct, as further described in this Complaint.

## CAUSES OF ACTION

## COUNT I
## NEGLIGENCE

56.    Plaintiffs re-allege and incorporate all preceding paragraphs as if fully set forth herein.

57.     Defendants actively participated in the manufacture, processing, and storage of hazardous chemicals at issue in this litigation, and as such owed duties of care in that regard.

58.     Defendants owed a duty to Plaintiffs and Class Members to exercise due care in manufacturing, maintaining, controlling, overseeing, inspecting, and monitoring hazardous chemicals.

59.     Defendants owed a duty to maintain, monitor, oversee, inspect, and control the Plant to avoid the release of harmful chemicals into the surrounding community.

60.     Defendants breached these duties, and others, by negligently manufacturing, maintaining, controlling, overseeing, inspecting, and monitoring the hazardous chemicals.

61.     Further, Defendants breached these duties by allowing the hazardous chemicals to burn or otherwise escape from the Plant into the surrounding community.

62.     Additionally, Defendants were required to conform their conduct to applicable federal, state, and local legal requirements, including without limitation the federal Clean Air Act, the federal Clean Water Act, the federal Resource Conservation and Recovery Act, the federal Comprehensive Environmental Response Compensation and Liability Act, including specifically the Emergency

Planning and Community Right-to-Know Act, Georgia Water Quality Control Act, The Georgia Waste Control Act, the Georgia Hazardous Site Response Act, the Georgia Comprehensive Solid Waste Management Act, and the regulations promulgated pursuant to the statutes.

63.     Plaintiffs and Class Members are members of the class of persons for whom legal requirements applicable to Defendants' conduct were designed to protect.

64.     Plaintiffs and Class Members' damages, and the damages suffered by those similarly situated, are the types of damages that legal requirements applicable to Defendants' conduct were designed to guard against.

65.     As a direct and proximate result of Defendants' negligent conduct, as alleged above, Plaintiffs and Class Members suffered damages in an amount which will be proven at trial.

## COUNT II
## NUISANCE

66.     Plaintiffs re-allege and incorporate all preceding paragraphs as if fully set forth herein.

67.     Plaintiffs have legitimate possessory rights in affected property near the Plant and legally protected interests.

68.     In allowing hazardous chemicals to escape into the open air through their reckless and negligent conduct or omissions, Defendants significantly interfered with public health, safety, peace, comfort, and convenience.

69.     Defendants' conduct, as alleged above, resulted in physical discomfort and mental annoyance to Plaintiffs and Class Members, has substantially interfered with Plaintiffs' and Class Members' ability to enjoy and use their properties and neighborhoods, and to carry on their businesses.

70.     The invasion of the use and enjoyment of Plaintiffs' and Class Members' lands by Defendants was intentional and/or unreasonable.

71.     The invasion of the use and enjoyment of Plaintiffs' and Class Members' properties by Defendants was negligent, and/or reckless, and/or caused by an abnormally dangerous activity.

72.     Defendants acted with intent in interfering with the use and enjoyment of Plaintiff's and Class Members' properties and legally protected interests.

73.     Defendants' activities violated certain state, and local laws, ordinances, and regulations.

74.     These state and local laws, ordinances, and regulations are intended to benefit the public and protect them from exposure to harmful quantities of toxic chemical compounds, and to further protect them from interference with the reasonable use and enjoyment of the properties.

75.    Defendants maintained the Plant which released harmful quantities of chlorine and other hazardous chemicals into the air, soil, and water.

76.    The release of harmful quantities of chlorine and other hazardous chemicals is an unreasonable interference with the rights common to the general public to enjoy, peacefully and unimpeded, the air, soil, and water in the surrounding community.

77.    The release of harmful quantities of chlorine and other hazardous chemicals involves a significant interference with the public health, safety, public peace, public comfort and public convenience.

78.    The release of harmful quantities of chlorine and other hazardous chemicals is proscribed by statute, ordinance, and/or administrative regulations.

79.    Plaintiffs and Class in this action have sustained harm special and distinct from harm suffered by the general public, as Plaintiffs and Class have lost business opportunity, and have been exposed to increased concentrations of annoying, obnoxious, foul, disgusting fumes and emissions emanating from the facility, and have been caused to leave their homes, vacate the outdoors, and/or leave their businesses on at least one occasion.

## COUNT III
## STRICT LIABILITY

80.    Plaintiffs re-allege and incorporate all preceding paragraphs as if fully set forth herein.

81. Defendants are engaged in an ultrahazardous activity in the manufacture, processing, and storage of chlorine and other hazardous chemicals.

82. Defendants are strictly liable for any and all damages which may occur or arise out of their distribution, transportation, storage, use and handling of chlorine and other hazardous chemicals regardless of their standard of care.

83. The harm to Plaintiffs and the Class members, as alleged in this Complaint and incorporated by reference, was and is the kind of harm that would be reasonably anticipated based on the normal risks created by manufacturing, processing, and storing hazardous chemicals in close proximity to residential, commercial, and agricultural areas.

84. As a direct and proximate result of Defendants' ultrahazardous activities, Plaintiffs and the Class members have suffered and will continue to suffer decreased property values, damage to their real and personal property, lost wages, loss of business income, and loss of business goodwill.

## COUNT IV
## TRESPASS

85. Plaintiffs re-allege and incorporate all preceding paragraphs as if fully set forth herein.

86. Defendants caused harmful quantities of chlorine and other hazardous chemicals to be released from the Plant and to enter upon the homes, land, soil, and water of the Plaintiffs and Class Members.

87.     Harmful quantities of chlorine and other hazardous chemicals entered the Plaintiffs and Class Members' homes, land, soil, water, and breathing air.

88.     Defendants knew, or should have known, that such discharges would enter onto Plaintiffs' and Class Members' properties.

89.     Plaintiffs and Class Members never sanctioned, permitted, or authorized any invasion of their properties of the chlorine and other hazardous chemicals released by Defendants from the Plant.

90.     The invasion, presence, and spreading of the chlorine and other hazardous chemicals released by Defendants from the Plant unreasonably interferes with the Plaintiffs and Class Members' exclusive right of possession in said properties.

91.     The invasion, presence, and spreading of the chlorine and other hazardous chemicals released by Defendants from the Plant constitutes a continuing abatable trespass by Defendants.

92.     Defendants' trespass and continuing trespass are the actual and proximate cause of property damages, including specifically, the loss of use and enjoyment of their properties, and other response costs, losses, and expenses, and other compensable harm to Plaintiffs and Class Members.

## COUNT V
## MEDICAL MONITORING

93.     Plaintiffs re-allege and incorporate all preceding paragraphs as if fully set forth herein.

94.     As a direct and proximate result of Defendants' acts and/or omissions, Plaintiffs and Class Members face an increased susceptibility to injuries and this irreparable threat to their health can only be mitigated by the creation of a fund to provide for a medical monitoring program, including: funding of a study of the long term effects of exposure to chlorine and other hazardous chemicals, funding a study of the long term effects of chlorine and other hazardous chemicals within the human body, gathering and forwarding to treating physicians information relating to the diagnosis and treatment of injuries which may result from exposure to chlorine and other hazardous chemicals, aiding in the early diagnosis and treatment of resulting injuries, and providing funding for diagnosis and preventable medical treatment.

95.     Plaintiffs and Class Members have no adequate remedy in law in that monetary damages alone do not compensate for the insidious and continuing nature of the harm to them, and only a monitoring program which notifies the recipients of an aid in correcting the problems can prevent the greater harms which may not occur immediately and which may be preventable if proper research is conducted and the health risks are diagnosed and treated before they occur or become worse.

96.     Plaintiffs and Class Members have suffered irreparable harm as alleged herein and, in the absence of equitable relief, will suffer further irreparable harm from exposure to chlorine and other hazardous chemicals.

## **PRAYER FOR RELIEF**

WHEREFORE, the following relief is requested:

a.     An order certifying this action as a class action.

b.     An award of statutory, compensatory, incidental, consequential, and punitive damages and restitution to the extent permitted by law in an amount to be proven at trial.

c.     An order enjoining Defendants' unlawful conduct.

d.     An award of attorneys' fees, expert witness fees, costs, and Class representative incentive awards as provided by applicable law.

e.     An award of expenses of litigation pursuant to O.C.G.A. § 13-6-11 because Defendants' actions evidence a species of bad faith.

f.     An award of interest as provided by law, including pre-judgment and post-judgment interest.

g.     Such other and further relief as this Court may deem just, equitable, or proper.

## **JURY DEMAND**

Trial by jury is demanded.


Dated November 5, 2024.

Respectfully submitted,

**WADE LAW FIRM**

_/s/ Nathan Wade_
Nathan Wade
Georgia Bar No. ---
1827 Powers Ferry Rd.
Bldg. 25 Suite 100
Atlanta, GA 30339
Tel: 770-303-0700
nathan@nwadelawfirm.com

_/s/ Chantel Cherry-Lassiter_
Chantel Cherry-Lassiter
Georgia Bar No. 314351
1827 Powers Ferry Rd.
Bldg. 25 Suite 100
Atlanta, GA 30339
Tel: 770-303-0700
chantel@nwadelawfirm.com